Bergan, J.
(dissenting in part). The analysis of the billing practices of defendants in the court’s majority opinion uncovers the basic essence of the controversy here. Finance charges are *462 computed monthly, the opinion observes, “ at the beginning, rather than [at] the close,, of the current monthly billing cycle ”.
It is exactly this practice, the majority at the Appellate Division felt, that ran against the “ plain and unambiguous ” terms of the statute. Neither payments nor purchases made during the monthly period under this method affect the amount of the finance charge against the balance shown at the beginning,, unless payment has entirely wiped out that balance.
The critical point of the Appellate Diyision’s view was that the statute' does not authorize the calculation of charges for the entire month on the basis of “ the total amount owing ” at'the beginning the period where, in fact, the purchaser has ‘ ‘ made payments on account ’ ’ during that period.
This seems an altogether reasonable construction of the words of the statute (Personal Property Law, § 413, subd. 3). The rates thus authorized must "be computed ‘' on the outstanding indebtedness from month to month ”. This language mandates consideration of changes in the “ outstanding indebtedness ” in the points of time between the “ from ” and the “ to ”. It seems to require “ rates computed ’ ’ as of the end of the time segment.
When one computes an “ outstanding ” indebtedness Running “ from ” a time “ to ” a time, the computation must necessarily be made at the end. If it were to be made at tÉe beginning, it would be pointless to use either “ from ” or “ to ". The time of computation would in that case be fixed at a definite point. It would be inappropriate to use the flowing time sense implied in “from month to month” if there were a frozen base for computation at the beginning.
As the Attorney-General argües here amicus curiae in support of the Appellate Division’s interpretation: “ If the word " outstanding ’ means anything at all, it means the amount still owed, after deducting payments made and credits received during the billing cycle.”
The practice for which appellants argue may have been general enough at the time of the enactment of the statute for the Legislature to have known about it but there is nothing in the legislative history that reveals the Legislature meant to sanction the methods of computation used by appellants, and the failure to enact later legislation toward clarification is inconclusive and always open to diverse interpretations.
*463 The majority opinion in this court notes that in terms of overall effect “ the previous balance, method ” now being sustained under the statute, from the consumer’s vantage is “ perhaps the least favorable method for computing finance charges If this is right, as it seems to be, it is incredible that the New York Legislature would intentionally have sanctioned this adverse effect on consumers. Its intention, indeed, must be deemed to have been favorable to New York consumers and the language it used is consistent with that intention.
The order .should be affirmed, but the plaintiffs’ cross appeal should be dismissed.
Chief Judge Fuld and Judges Burke, Breitel and Gibson concur with Judge Scileppi; Judge Bergan dissents in part and on defendants’ appeal votes to affirm in a separate opinion in which Judge Jasen concurs.
On plaintiffs’ cross appeal: Appeal dismissed, without costs.
On defendants’ appeal: Order reversed, without costs, and orders and judgments of Special Term reinstated.